IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES A. SMITH and
JEANETTE H. SMITH

**PLAINTIFFS**

VERSUS

**2:05CV1198-T**

KANSAS CITY LIFE INSURANCE COMPANY,
GUIDEONE LIFE INSURANCE COMPANY,
THE GUIDANT INSURANCE GROUP, GUIDANT
LIFE INSURANCE COMPANY, PREFERRED RISK
LIFE INSURANCE COMPANY, ANNE F. WATKINS,
JIM McCAFFERTY, et al.

**DEFENDANTS**

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION TO REMAND

---

Kansas City Life Insurance, f/k/a GuideOne Life Insurance Company, f/k/a Guidant Insurance Company or Group, f/k/a Preferred Risk Life Insurance Company, GuideOne Insurance Company (the "insurance defendants"), Anne Watkins ("Watkins") and Jim McCafferty ("McCafferty") submit this Response in Opposition to Plaintiffs James A. Smith and Jeanette H. Smith (collectively the "Smiths" or "Plaintiffs") Motion to Remand.  This Court should deny Plaintiffs' Motion to Remand, as the plaintiffs fraudulently joined Watkins as a defendant in this case.  There is no reasonable basis for predicting that Watkins could be held liable under any of the plaintiffs' alleged causes of action for the following reasons:

- ► Watkins had nothing to do with the issuance of the policies that are the subject of this lawsuit,

- ► Watkins did not meet or speak with the Smiths before they bought their policies in 1991, and was not involved in discussions with them regarding the policies,

1

▶    Watkins did not make any representations or recommendations to the Smiths regarding the life insurance policies,[1]

▶    The Smiths did not ask Watkins any questions prior to purchasing the subject policies, and

▶    The applicable statute of limitations with respect to Watkins expired long before Plaintiffs filed this action.

## I. Introduction

The Smiths are resident citizens of Alabama. *Complaint* at ¶ 1. Watkins is the sole resident defendant of Alabama. *Affidavit of Anne F. Watkins* ("Watkins' Affidavit") at ¶ 4. A copy of Watkins' Affidavit is attached as Exhibit One. In 1991, Watkins was being trained as a life insurance agent by defendant McCafferty's agency in Montgomery, Alabama. *Watkins Affidavit* at ¶ 2. The Smiths purchased their Preferred Risk life insurance policies from Jim McCafferty's agency, and Watkins was allowed to sign the Smiths' policy applications as soliciting agent in order for her to get some credit for selling the policies. *Watkins Affidavit* at ¶¶ 3, 5. However, Watkins did not meet, speak, or otherwise communicate with the Smiths prior to their purchase of the Preferred Risk policies. All pre-sale communications regarding the policies took place between McCafferty and the Smiths. *Watkins Affidavit* at ¶ 4.

On November 7, 2005, the Smiths filed their complaint against the insurance defendants, as well as Watkins and McCafferty. The Smiths alleged that in 1991, McCafferty approached them regarding the purchase of a new life insurance policy for Jeanette, and a replacement life insurance policy for James.[2] The Smiths alleged that they relied on McCafferty's expertise and representations

---

[1]      Similarly, the Smiths did not ask Watkins any questions regarding the subject policies prior to purchasing the policies.

[2]      The plaintiffs conceded within their Motion to Remand that all pre-sale discussions regarding their policies occurred between themselves and McCafferty. *See Plaintiffs' Brief in Support of Motion to Remand* at 2. They do not contend that Watkins participated in any of the pre-sale discussions regarding the life insurance policies, and do not contend that they tried to communicate with Watkins in any manner prior to the sale of the life insurance policies.

in selecting the policies in question, and further alleged that they believed that the policies they purchased were risky, not well-suited for their life stage, and that replacing James' whole life policies was to his detriment.[3]

The insurance defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1446 (b). The insurance defendants claimed that this Court had jurisdiction over this matter as complete diversity of citizenship existed between the properly joined parties.[4] The insurance defendants also claimed that Watkins, the sole Alabama resident citizen defendant, was fraudulently joined, as there was no reasonable basis for predicting that the plaintiffs could successfully establish a cause of action against Watkins.

Predictably, the Smiths objected to the removal of the case to federal court, and filed their Motion to Remand on January 12, 2006. The Smiths conceded that Watkins had not made any misrepresentations to the Smiths, but claimed that Watkins could be held liable under the theories of fraudulent suppression, negligence, and wantonness. The Smiths are mistaken in their contentions with respect to Watkins, and their Motion to Remand should be denied.

---

[3]     The Smiths do *not* allege that they ever tried to talk to or ask questions of Watkins prior to their purchase and acceptance of the Preferred Risk life insurance policies. The Smiths do *not* allege that they contacted Watkins after they received their policies, prior to the expiration of the twenty day right to examine policy period, and asked her any questions regarding their policies, or whether those policies met their pre-sale expectations.

[4]     The insurance defendants are corporations organized and existing under laws of states other than Alabama, and they have their principal places of business in Missouri and Iowa, respectively. McCafferty is a resident citizen of North Carolina. The Smiths allege that they are resident citizens of Alabama. *See Notice of Removal* at ¶¶ 5-7.

## II. Argument

### A. Federal Jurisdiction

Pursuant to 28 U.S.C. § 1332, federal district courts have jurisdiction over civil actions where there is complete diversity between the parties, and the amount in controversy exceeds $75,000. Although diversity jurisdiction typically requires that "every Plaintiff . . . be diverse from every defendant," *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996), Alabama's federal courts have specifically held that "when a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based upon diversity jurisdiction. *Bullock v. United Benefit Ins. Co.*, 165 F. Supp. 2d 1255, 1256 (M.D. Ala. 2001).

### B. Fraudulent Joinder

Fraudulent joinder occurs when "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. *Fowler v. Provident Life & Accid. Ins. Co.*, 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003). Courts routinely reject the suggestion that "any mere theoretical possibility of recovery under local law . . . suffices to preclude removal." *Travis v. Irby*, 326 F. 3d 644, 648 (5th Cir. 2003). Instead, courts recognize that the applicable fraudulent joinder standard is more correctly described as requiring a showing that there is no *reasonable* basis for predicting liability against the fraudulently joined defendant:

> Plaintiffs appear to argue that *any mere theoretical possibility* of recovery under local law - no matter how remote or fanciful - suffices to preclude removal. We reject this contention. As cited authorities reflect, there must at least be arguably a *reasonable basis* for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder.

4

*Badon v. RJR Nabisco, Inc.* 236 F.3d 282, 286 n. 4 (5th Cir. 2000)(emphasis in original). The Court

of Appeals for the 11th Circuit has recognized that there must be a reasonable basis for predicting

liability in considering a motion to remand:

> The potential for legal liability "must be reasonable, not merely theoretical." Great
> Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir.
> 2002). In considering possible state law claims, possible must mean "more than
> such a possibility that a designated residence can be hit by a meteor tonight. That is
> possible. Surely, as in other instances, reason and common sense have some role."
> Braden v. Wyeth, CV-04-PT-235-E (N.D. Ala. June 30, 2004). Without any
> evidence that Weaver knew or should have known Redux was dangerous, it is hard
> to conclude, applying reason and common sense, that the plaintiffs have a viable
> claim against her under Alabama law.

*Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005).

C. The Smiths' Fraudulent Suppression Claims Against Watkins Fail As A Matter Of Law

The Smiths claim that there is a reasonable possibility that they can establish that Watkins

is liable to them for fraudulent suppression. The tort of fraudulent suppression is codified at § 6-5-

102 (1975) of the Alabama Code:

> Suppression of a material fact which the party is under an obligation to communicate
> constitutes fraud. The obligation to communicate may arise from the confidential
> relations of the parties or from the particular circumstances of the case.

In order for the Smiths to establish a reasonable possibility that Watkins could be held liable

under this theory, the Smiths must specifically plead or produce evidence establishing : [5]

(1) that Watkins had a duty to disclose an existing material fact to them;
(2) that Watkins suppressed this material fact;
(3) that Watkins' suppression of this fact induced them to act or to refrain from acting; and
(4) that they suffered damages as a proximate result.

---

[5]    Rule 9(b) of the Federal Rules of Civil Procedure clearly requires that a Plaintiff must specifically
plead the circumstances constituting fraud. The Smiths' generic allegations regarding "defendants" do not meet
Rule 9(b)'s requirement for specificity, given the fact that the plaintiffs have conceded that they never talked with
Watkins prior to the purchase of their policies.

*State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834, 837 (Ala. 1999). To the extent that these elements are considered in conjunction with Watkins' affidavit, it becomes readily apparent that the Smiths do not have a possibility of establishing that Watkins could be held liable for fraudulent suppression.

### 1. Watkins Did Not Have A Duty To Disclose Material Facts To The plaintiffs

According to well-established precedent, a party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact. *State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834, 837 (Ala. 1999).

> Section 6-5-102 sets out two alternatives through which a duty of disclosure may be created. In the first instance, the obligation to communicate could arise from the confidential relations of the parties. [Plaintiff] does not contend that her relationship with [Defendant] was a fiduciary relationship, nor would the evidence in this case support such a finding. Thus, the imposition of a duty of disclosure could have been justified only if this case presented special circumstances mandating disclosure.

*Id.* at 842.

### a. A Confidential Relationship Did Not Exist.

Watkins testified, via affidavit, that she did not meet with, speak with, or otherwise communicate with the Smiths before they bought their policies, and that she did not make any recommendations or representations to them about the life insurance policies that they were purchasing. *Watkins Affidavit* at ¶ 4. Further, the Smiths did not allege any facts that would support a conclusion that Watkins had a fiduciary relationship with them prior to their purchase of the subject policies. Instead, the Smiths admit that all pre-sale discussions occurred between them and McCafferty. *See Plaintiffs' Brief in Support of Motion to Remand* at 2. Therefore, no confidential relationship existed between Watkins and the plaintiffs, and Watkins did not have a duty to disclose any facts to the Smiths.

### b. Special Circumstances Did Not Exist

6

Given the fact that Watkins did not have a confidential relationship with the Smiths, the only way a duty of disclosure could be imposed on Watkins is if special circumstances existed that would require her to speak.[6] The determination of whether such a duty exists is a question of law to be determined by the trial judge. *State Farm v. Owens*, 729 So. 2d at 839. Based on Watkins' affidavit and other evidence, it is clear that those special circumstances did not exist as a matter of law.

- ▸ <u>Relationship</u> - Watkins and the plaintiffs did not have any sort of relationship prior to the Smiths' purchase of the life insurance policies, as they had never met before.

- ▸ <u>Knowledge</u> - Watkins was merely an agent in training when the Smiths purchased their policies. Further, the Smiths have not alleged that they were illiterate or otherwise unable to understand the plain terms of their policies.

  > [I]n practically any transaction, particularly those involving specialized areas like insurance, one party will have greater knowledge than the other. While that factor should be important, it should not be dispositive. Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information.

  > *State Farm v. Owens*, 729 So. 2d at 834.

- ▸ <u>Value</u> - While the plaintiffs contend that they were purchasing the universal life policies for permanent protection, the facts establish that both Plaintiffs purchased policies with significantly higher death benefits than they previously enjoyed. Had either of the plaintiffs passed away, they would have gained the benefit of the higher death benefits provided by the universal life policy.

- ▸ <u>Plaintiffs' Opportunity to Ascertain the Fact</u> - The plaintiffs clearly could have asked Watkins for her opinion or for additional information regarding the policies they were considering purchasing. The plaintiffs chose not to request that information. "When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose arises *when information is not requested*." *Bama Budweiser of Montgomery, Inc. v. Anheuser Busch, Inc.*, 611 So. 2d 238, 246 (Ala. 1992)(emphasis added). Further, when the plaintiffs received the policies, they each had twenty days to examine their policies and compare the policy provisions with their expectations:

---

[6]    Relevant factors the Court may consider include (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances. *State Farm v. Owen*, 729 So. 2d at 843.

**20-DAY RIGHT TO EXAMINE POLICY:** Your policy may be returned to either your agent or our executive office within twenty days of its receipt if you wish. We will refund any premium paid and your policy will be considered void from its inception. **THIS IS A LEGAL CONTRACT. PLEASE READ IT CAREFULLY.**

The policies further provided on the front page of the policy **"Flexible Premiums Payable Until Maturity Date or Prior Death."** The plaintiffs had every opportunity to review their policies, compare the minimum monthly premiums to their planned premium expectations, and to consider whether the guaranteed benefits, values and policy years based on their planned premiums met their expectations. *See Plaintiffs' Insurance Policies* at 3-4. Copies of these policies are attached as Exhibits 2 and 3.

- ► <u>Custom</u> - All pre-sale communications regarding the Smiths' policies occurred between McCafferty and the plaintiffs. Custom would dictate that someone completely removed from the sale of the policies, to whom the plaintiffs never communicated with, would not have a duty to disclose facts to them. Common sense tells us that if the plaintiffs did not have any questions for Watkins, and did not ask for her advice, that she would not have a duty to disclose unsolicited information or facts.

It is clear, based on the above undisputed facts, that special circumstances did not exist to impose on Watkins a duty to disclose material facts to people that she had not talked with, and did not know. Therefore, the Smiths' fraudulent suppression claim against Watkins must fail.

  c. <u>Watkins Did Not Intentionally Conceal Or Fail To Disclose Material Facts In An Effort To Deceive The plaintiffs.</u>

In order to establish a claim for fraudulent suppression, the plaintiff must produce evidence of a present intent on the part of the defendant to deceive the plaintiff by suppressing or actively concealing an existing material fact. *Crowder v. Memory Hill Gardens, Inc.*, 516 So. 2d 602, 604-05 (Ala. 1987). In the instant case, the plaintiffs neither alleged with the specificity required by Rule 9(b), nor can they prove, that prior to the sale of the policies, Watkins intentionally deceived them by suppressing or concealing an existing material fact. To the contrary, Watkins never talked with the plaintiffs, and the plaintiffs never told Watkins that they wanted her to provide them with any

sort of material fact or information. Thus, the Smiths' fraudulent suppression claim against Watkins fails as a matter of law.

### d. The Smiths Did Not Reasonably Rely On Watkins' Silence

The Smiths failed to allege with any specificity how *Watkins'* silence induced them to purchase the subject life insurance policies. However, in order to successfully establish their fraudulent suppression claim, the Smiths were required to expressly identify how Watkins induced them to purchase their life insurance policies. Additionally, the Smiths must establish that Watkins' "suppression of the existing material fact . . . led the plaintiff to act to his detriment *in reasonable reliance thereon.*" *Crowder v. Memory Hill*, 516 So. 2d at 605. *See also Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 422 (Ala. 1997).

The Smiths cannot establish that they reasonably relied on Watkins' silence, and that her silence induced them to purchase their policies. First, they never talked with Watkins, and never asked Watkins for any information. Thus, the Smiths could not reasonably rely on the silence of a person with whom they had never communicated. Second, it is well-established that Plaintiffs cannot "blindly rely on an agent's oral representations or silence to the exclusion of written disclosures in a policy." *See Caver v. Liberty Nat'l Life Ins. Co.*, 742 So. 2d 168, 172-73 (Ala. 1999)(holding that where insurance policy had 20 day 'free look' provision, Plaintiff had the opportunity to examine and compare the policy to his expectations and could not rely on silence of agent or company). *See also Liberty Natl. Life Ins. Co. v. Ingram*, 887 So.2d 222 (Ala. 2004) (holding where Plaintiff received policy with free-look provision, Plaintiff could not reasonably rely on oral representations or omissions.) In this case, the Smiths' policies clearly stated that flexible premiums were payable until maturity date or death, *Policy* at 1, 2, clearly identified the minimum monthly premium, *Policy* at 3, and clearly identified the guaranteed death benefit and the guaranteed

paid-up period for the policies. *Policy* at 4. Thus, the Smiths had every opportunity to compare their expectations with the actual terms of their policies, and could not reasonably rely upon Watkins' silence to contradict the terms of the policy.

e. <u>The Statute Of Limitations Bars The Smiths' Claims</u>.

In *Fowler v. Provident Life and Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1247 (N.D. Ala. 2003), this Court held that if fraud claims and negligent misrepresentation claims are time-barred as to a non-diverse defendant, then there is no possibility that the plaintiff can establish a cause of action against that defendant, and a finding of fraudulent joinder is appropriate.

In the instant case, fraudulent suppression claims are subject to a two year statute of limitations. *Id.* at 1248. Fraudulent suppression claims accrue upon the earlier of (1) actual discovery of the alleged fraud, or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood the document. *Id.* Pursuant to *Foremost*, insureds have a duty to read documents received in connection with a particular transaction. Once the insureds have received the policies, they are put on actual and constructive notice of the terms of their policies, and the time for filing a fraud claim begins to run at that time. *See Levett v. Independent Life and Accident Ins. Co.*, 814 F. Supp. 1053, 1057 (M.D. Ala. 1993).

The Smiths received their policies in April 1991. At that time, the Smiths had a free opportunity to read their policies and determine whether their life insurance policies were consistent with the representations upon which they based their decision to purchase the policies. The Smiths have alleged that they believed that their premiums would remain constant over the period of their lifetimes, and that the plaintiffs would have the death benefits of these policies available to them at their death so long as they continued to pay premiums. *Complaint* at ¶ 19. These expectations were clearly out of line with the guaranteed benefits and paid-up term periods of their policies, and the

10

Smiths knew or should have known this at the time they received their policies. As such, the statute of limitations began running in April 1991, and expired in April 1993, some 12 years before Plaintiffs filed this action.

### D. The Plaintiffs' Negligence And Wantonness Claims Against Watkins Fail As A Matter Of Law.

The Smiths contend that if an insurance agent undertakes to obtain for an insured a particular type of policy, and negligently fails to do so, the agent may become liable for any damage resulting therefrom. *See Lewis v. Roberts*, 630 So. 2d 355, 357 (Ala. 1993). The Smiths ignore the fact that James Smith applied for and received a $50,000 universal life insurance policy, and Jeanette Smith applied for and received a $20,000 universal life insurance policy. Copies of the Smiths' Applications are attached as Exhibits 4. Watkins undertook to obtain for the Smiths the policies they applied for, and Watkins procured the policies that the Smiths applied for. There is nothing within the applications that indicated to Watkins that the Smiths wanted a different type of policy, and since the Smiths never talked with Watkins, there is no basis for concluding that Watkins should have done anything other than procure them the policies they applied for. Thus, Watkins did not breach any duty to procure the insurance the plaintiffs applied for, and their negligence claim fails as a matter of law.[7]

With respect to the plaintiffs' wantonness claim against Watkins, the plaintiffs have not identified any conscious act or omission of Watkins prior to the sale of the subject policies, or that Watkins was conscious that from doing or omitting to do an act, that injury would likely or probably occur. To the contrary, since Watkins never spoke with the plaintiffs prior to their procuring the life insurance policies, Watkins could *not* have consciously known that injury would occur by her

---

[7]    The plaintiffs' claims would be barred by the statute of limitations in any event, as the statute began running upon the plaintiffs' receipt of their policies in 1991.

11

procuring the exact policies that the plaintiffs applied for. The Smiths' wantonness claim is completely without merit.

### III. Conclusion

While establishing fraudulent joinder is a heavy burden, it is not an impossible one to meet. In this case, it is clear that the plaintiffs are frantically trying to avoid this Court's jurisdiction. The claims that the plaintiffs contend might possibly apply to Watkins simply do not. There is no reasonable basis for predicting that Watkins, who had nothing to do with the issuance of the policies in question, and did not meet or talk with the plaintiffs prior to the issuance of these policies, could possibly be held liable under the theories of fraudulent suppression, negligence, or wantonness. Therefore, Defendants respectfully request that the Court deny the plaintiffs' Motion to Remand. Defendants request such further relief as this Court may find just and proper.

Respectfully submitted,


/s/ Donald R. Jones, Jr.
DONALD R. JONES, JR.
ASB-8900-067D
Attorney for Defendants


OF COUNSEL:

DONALD R. JONES, JR. P.C.
2000 Interstate Park Drive
Suite 104
Montgomery, AL 36109
PHONE: (334) 277-3939
FAX: (334) 277-3772

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the ECF system which was sent notification of such filing to counsel who have electronically registered with the Court, and I hereby certify that I have mailed by United States Postal Service the document to the non-ECF participants. The following is a list of all counsel of record or parties regardless whether electronically notified by the Court or sent via United States Postal Service by this firm:

Lynn W. Jinks
JINKS, DANIEL & CROW, P.C.
Post Office Box 350
Union Springs, AL 36089

Frank M. Wilson
FRANK M. WILSON, P.C.
Post Office Box 2389
Montgomery, AL 36102-2389

This the 9th day February, 2006.


/s/ Donald R. Jones, Jr.
OF COUNSEL

13