IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES A. SMITH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 2:05-cv-01198-WKW |
| ) | (WO) |
| KANSAS CITY LIFE INSURANCE ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the court for consideration of the Motion to Remand, filed by Plaintiffs, James A. Smith and Jeanette H. Smith (collectively, "Plaintiffs"). In support of the motion, Plaintiffs claim this court lacks diversity jurisdiction. Defendants Kansas City Life Insurance Company, four other life insurance companies,[1] and their agents, Anne F. Watkins ("Watkins") and James McCafferty ("McCafferty") (collectively, "Defendants"), assert that the nondiverse defendant, Watkins, is fraudulently joined. For the reasons set forth below, the Motion to Remand (Doc. # 8) is due to be GRANTED.

**I. FACTUAL BACKGROUND**

According to the allegations in the complaint filed in the Circuit Court of Montgomery County, Alabama, McCafferty approached Plaintiffs in 1991 to recommend that they buy new "flexible premium adjustable life" insurance policies. (Doc. # 1-3, Compl. at ¶ 15-17.) McCafferty

---

[1] Plaintiffs allege that Kansas City Life Insurance Company, Guide One Insurance Company, The Guidant Insurance Group, Guidant Life Insurance Company, and Preferred Risk Life Insurance Company are either the same entity, or alter egos, agents, or successors-in-interest of each other. Defendants answer that GuideOne Life Insurance Company was formerly known as Preferred Risk Life Insurance Company and Guidant Life Insurance Company, and that Kansas City Life Insurance Company purchased GuideOne Life Insurance Company from GuideOne Insurance Company.

further suggested that Plaintiffs roll their existing whole life insurance policies into the new ones. (*Id.*)  He told them the premiums would remain constant over the course of their lifetimes and that the beneficiaries of the policies would receive the same death benefit no matter how long Plaintiffs live. (*Id.* at ¶ 19.)  Plaintiffs allege, however, that in fact the premiums have risen beyond what they can afford and the policies may lapse before their deaths.  (*Id.* at ¶ 28.)  Moreover, McCafferty allegedly held himself out as an advisor and consultant acting in Plaintiffs' best interest.  (*Id.* at ¶ 23.)  Based on these representations and omissions, Plaintiffs allege that they purchased life insurance plans which they otherwise would not have purchased and which were not in their best interest.  (*Id.* at ¶ 27.)

According to her affidavit, Watkins was a trainee at McCafferty's agency at the time of these transactions.  (Doc. # 1-6, Watkins Aff ¶ 2.)  McCafferty allowed her to sign the Plaintiffs' insurance application as "soliciting agent" and receive credit with Preferred Risk Insurance Company for the sale.  (*Id.* at ¶ 5.)  Watkins maintains that she had no pre-sale communications with Plaintiffs (*Id.* at ¶ 5), but is silent with respect to her knowledge of McCafferty's alleged misrepresentations and suppression, whether she knew the plaintiffs or their circumstances, and her pre-sale knowledge of the pre-existing policies of the plaintiffs.[2]

Plaintiffs claim to have discovered the misrepresentation in April 2005.  (Doc. # 1-3, Compl. at ¶ 28).  They bring this complaint stating causes of action for misrepresentation, breach of fiduciary duty, negligence, wantonness, negligent and wanton supervision, and conspiracy to fraudulently suppress the content of the Smiths' new life insurance policies.  (*Id.*)  Defendants respond that

---

[2] Though it is not directly relevant to the cause of action upon which the court bases its opinion, Watkins' affidavit is also notably silent as to Watkins' post-sale communications with and relationship to the Plaintiffs, any role Watkins had in Plaintiffs rolling their existing policies into their new ones, and delivery of the new policies to Plaintiffs.

Watkins is fraudulently joined and that the statute of limitations has run on all claims stated against her.

Defendants filed a Notice of Removal claiming the requisite amount in controversy and, absent Defendant Watkins, complete diversity of citizenship between all plaintiffs and all defendants. (Doc. # 1-1, Notice of Removal.)  Plaintiffs moved to remand, arguing that they have stated a possible cause of action against Watkins.  (Doc. # 8.)  Defendants filed a response (Doc. # 12), and Plaintiffs filed a reply (Doc. # 13).

## II. STANDARD OF REVIEW

The success of Plaintiffs' motion to remand is contingent upon the absence of complete diversity of citizenship.  A federal district court has original jurisdiction over cases involving citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). "Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity - every plaintiff must be diverse from every defendant." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996), abrogated on other grounds in *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

District courts are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir.1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365 (11th Cir.1994)).  Accordingly, the federal removal statutes must be strictly construed against removal, and, generally speaking, all doubts about removal must be resolved in favor of remand.  *See Shamrock Oil and Gas Corp. v.*

*Sheets*, 313 U.S. 100, 108-09 (1941); Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir. 1979).[3] After a motion to remand, the removing party has the burden of proving federal jurisdiction. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).

### III. DISCUSSION

Diversity jurisdiction "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Therefore, when determining whether complete diversity exists, courts disregard the citizenship of fraudulently-joined defendants. *See Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir.1979). The Eleventh Circuit has found defendants fraudulently joined in three circumstances:

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. . . . The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. . . . [The third is] where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (internal citations omitted).

Defendants argue only the first instance, claiming that there is no possibility Plaintiffs can prove a cause of action against Watkins. (Doc. # 12, Def.'s Resp. 4.) In this they confront a heavy burden. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989); *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The court is required to examine the pleadings at the time of removal, along with limited evidence in the form of affidavits and deposition transcripts, and is precluded from "weigh[ing] the merits of a plaintiff's claim beyond determining whether it

---

[3]*See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

is an arguable one under state law." *Id.* at 1538. All uncertainties in fact and in the controlling law are resolved in the plaintiff's favor. *Cabalceta*, 883 F.2d at 1561. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court."  *Crowe*, 113 F.3d at 1538 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983)). At the same time, however, the possibility of liability on the part of the allegedly fraudulently joined defendant "must be reasonable, not merely theoretical." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n. 5 (11th Cir. 2005).

Mindful that remand is required if there is a reasonable, not theoretical, possibility that the nondiverse defendant is liable on any count, the court finds that Plaintiffs have stated a colorable cause of action against Watkins, and that a court might reasonably find the statute of limitations issue is properly left to the trier of fact. To hold otherwise would require the summary dismissal of all claims against Watkins upon an incomplete record. The court cannot find at this juncture that there is no colorable cause of action against Watkins as a matter of law.

The colorable cause of action Plaintiffs have stated against Watkins will be addressed first. Then the court will address Defendants' statute of limitations argument.

*A. Cause of Action*

The court finds that Plaintiffs have stated a colorable cause of action for conspiracy to defraud.[4] "[C]onspiracy is not an independent cause of action, and therefore, 'when alleging conspiracy, a plaintiff must have a viable underlying cause of action.'" *Estate of Scott v. Scott*, 907

---

[4] Neither party addresses directly a conspiracy to defraud as a basis for defeating Defendants' fraudulent joinder motion. However, the parties' positions may be extracted from the their briefs.

F. Supp. 1495, 1500 (M.D. Ala. 1995). An examination of the elements of fraudulent suppression yields an underlying cause of action sufficient to support a colorable conspiracy claim against Watkins.

*1. Fraudulent Suppression*

Plaintiffs' cause of action for conspiracy to defraud is founded upon a cause of action for fraudulent suppression against McCafferty. According to the Alabama Code, "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." *Ala. Code* § 6-5-102 (1975). "The elements of a claim of fraudulent suppression are generally stated as (1) a duty to disclose the facts, (2) concealment or nondisclosure of material facts by the defendant, (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his injury." *Carter v. Chrysler Corp.*, 743 So. 2d 456 (Ala. Civ. App. 1998).

Plaintiffs have adequately alleged the nondisclosure of a material fact: that their premiums would not necessarily stay constant over the life of their policies. They have also alleged the existence of an injury: since Plaintiffs cannot afford to pay the higher monthly premiums, their policies may lapse. The court also finds that plaintiffs have stated sufficient allegations that defendant McCafferty owed a duty to disclose to Plaintiffs that their premiums might increase. Plaintiffs allege the duty arose from the confidential relationship of the parties, which in turn arose because defendants held themselves out as experts and advisors, acting in Plaintiffs' best interest. *See Dominick v. Dixie Nat. Life Ins. Co.*, 809 F.2d 1559, 1571 (11th Cir. 1987) ("[A]n attempt to win appellants' confidence, . . . when [successful], imposes a corresponding duty of fair dealing.")

As to the third element, plaintiffs have stated a colorable claim that they were induced by

6

defendant McCafferty's silence as to the possibility of an increase in premiums. Plaintiffs' insurance policies are styled "FLEXIBLE PREMIUM ADJUSTABLE LIFE." (Doc. # 12, Ex. 3, Jeanette H. Smith Policy 1; Doc. # 12, Ex. 4, James Arthur Smith Policy 1.) On the "POLICY SPECIFICATIONS" page, each policy contains the phrase "MINIMUM MONTHLY PREMIUM." (Ex. 3 at 3; Ex. 4 at 3.) Plaintiffs' policies also contain a "free look" provision.[5] (*Id.*)

Citing *Caver v. Liberty National Life Insurance Company*, 742 So. 2d 168, 172-73 (1999), Defendants argue that when an insurance policy contains a "free look" provision, the plaintiffs may not "blindly rely on an agent's oral representations or silence to the exclusion of written disclosures in a policy." (Doc. # 12, Def.'s Resp. 9.) Defendants further argue that the policies' flexible premium and minimum monthly premium descriptive and contract terms put Plaintiffs on notice that premiums might increase. (*Id.* at 9.)

The court finds, however, that the language of Plaintiffs' policies is not sufficient to defeat Plaintiffs' allegation that McCafferty misrepresented the policy provisions to them and induced them by his silence to believe that their premiums would remain constant. The mere existence of "Minimum Monthly Premium" as a policy description does not give notice that Plaintiffs' premiums are subject to change at the insurer's election. Nor is there clarification or notice to the Plaintiffs in the actual language under the "Minimum Monthly Premium" paragraph on page 6 of the policies:

> Minimum Monthly Premium – This policy will not terminate within a three-year period following the most recent issue Date if on each Monthly Deduction day within that period the sum of premiums paid within that period equals or exceeds the difference between (a) and (b) where:

---

[5] A "free look" provision is the contractual option of the insured to inspect the policy for a certain length of time and to render it void before the expiration of that period.

>> (a)  is the sum of the Minimum Monthly Premiums, shown on page 3, for each policy month from the start of that period, including the current month; and,
>
>> (b)  is any withdrawals plus any increase in the loan balance since the start of that period.

(Doc. # 12, Ex. 3, Jeanette H. Smith Policy 6; Doc. # 12, Ex. 4, James Arthur Smith Policy 6.) By its language, this provision applies only to termination within a three-year period following the most recent issue date. Other relevant premium language in the policy is contained on page 5 under the heading "Premiums and Reinstatement:"

> Premiums – Premium due dates, policy anniversaries, policy years and policy months are measured from the policy date. . . .
>
> Additional Premiums – Additional premiums may be paid at any time while the policy is in force and before the maturity date. We will have the right to limit the amount and number of additional premiums, . . .

(Ex. 3 at 5; Ex. 4 at 5.)  Notice to Plaintiffs that their premium might increase is simply not found in this language.

Likewise, the policy's appellation, "Flexible Premium," is nowhere defined or explained in the policy. There are vague references to "Cost of Insurance," "Cost of Insurance Rates," and "maximum monthly costs of insurance rates" (Ex. 3 at 7; Ex. 4 at 7) which, if referring to flexible premiums, studiously avoid those words or any other reference to premiums, flexible or not. One searches these policies in vain to find any language which would reasonably put Plaintiffs on notice as to the meaning of "Flexible Premiums" or "Minimum Monthly Premiums." Accordingly, the "free look" provision is rendered wholly ineffective. The court can find nothing in the policy language supporting the position of Defendants on written disclosures.

Thus, the underlying cause of action for fraudulent suppression against McCafferty is

adequately alleged, and the Defendants' claim of notice or disclosure as a defense is not readily apparent.

### *2. Conspiracy*

Having adequately alleged the underlying tort of fraudulent suppression against defendant McCafferty, Plaintiffs must also demonstrate sufficient allegations as to defendant Watkins' involvement in a conspiracy with other defendants. Under Alabama civil conspiracy law, "[i]n order to succeed on a civil conspiracy claim, a plaintiff must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000). Moreover, "one person's material relationship with a person accused of fraud" does not make "that first person subject to a claim of conspiracy to commit fraud." *Scott v. Commonwealth Land Title Ins. Co.*, 518 So. 2d 102, 105 (Ala. 1987). In other words, "[o]ne cannot inadvertently become a member of a civil conspiracy [;]" rather, "[t]he plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." *First Bank of Childersburg v. Florey*, 676 So. 2d 324, 327 (Ala. Civ. App. 1996).

That Watkins signed Plaintiff's insurance policy as "soliciting agent" and received "credit" for the sale (Doc. # 1, Watkins Aff. ¶ 5) alone establishes, at this juncture, a colorable claim for conspiracy against Watkins. The signing of the insurance applications, which became a part of the instruments of the alleged deception, provides the circumstantial link necessary to establish the reasonable possibility that Watkins knew the content of the policies, and that she knew the deceptive circumstances under with they were procured. The fact that Watkins benefitted from the completion

of this transaction provides another basis upon which to infer her knowledge and intent.[6] Defendants offer rebuttal evidence in the form of Watkins' affidavit; however, the fact that Watkins had no pre-sale communications with Plaintiffs does not rebut the Plaintiffs' allegations that Watkins knew and intended McCafferty's alleged suppression. Nor does it rule out other possible post-sale actions that Watkins may have undertaken in furtherance of the conspiracy, such as delivering the policies or rolling the old policies into the new. Presumably, no policy would have been issued without a soliciting agent. Watkins represented by her signature that she was an agent, thereby interjecting herself into the transaction. Her signature in that context was not meaningless.[7] On the current state of the record, the court cannot rule out the possibility that Watkins' knew of and intended McCafferty's suppression.

## B. *Statute of Limitations*

Defendants argue the statute of limitations has run on any claim of the Plaintiffs for fraudulent suppression. Actions for fraudulent suppression are subject to a two-year statute of limitations, Ala. Code, § 6-2-38 (1975), but only begin to run when a plaintiff actually discovers or reasonably should have discovered the fraud. *Casassa v. Liberty Life Ins. Co.*, 949 F. Supp. 825 (M.D. Ala. 1996). "Generally, the question of when a plaintiff discovered or should have discovered the fraud is to be decided by the trier of fact." *Id*. at 828. However, the court must place the point in time at which the statute begins to run, that is, when the fraud should have been discovered, as a

---

[6] Alabama's Pattern Civil Jury Instruction § 43.01 provides: "Because of the clandestine nature of a conspiracy, proof that a conspiracy existed may be proved [sic] by inference and circumstantial evidence concerning the character of the acts done, the relation of the parties and other facts and circumstances suggestive of a concerted action." 2 ALA. PATTERN JURY INSTR. CIV. § 43.01 (1993).

[7] It will be the duty of perhaps another court on another occasion, after fair development of the facts, to determine the legal effect of Watkins' signature in the context of all the circumstances.

matter of law, "when a [plaintiff] receives documents that would put a reasonable person on notice of the fraud." *Id.* (citing *Liberty Nat. Life Ins. Co. v. McAllister*, 675 So. 2d 1292, 1297 (Ala.,1995)).

Plaintiffs allege they discovered the fraud in April 2005. As stated above, nothing in the Plaintiffs' insurance policies should have alerted them that their premiums might increase. Whether Plaintiffs discovered or should have discovered, from annual insurance statements they received from Defendants, the facts which constitute Plaintiffs' fraud claim is properly left to the jury.

## IV. CONCLUSION

This court is bound "to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent." *Crowe*, 115 F.3d at 1542. Because the Court finds Plaintiffs have stated a colorable cause of action for conspiracy to defraud, this action must be remanded to the state court. Accordingly,

It is hereby ORDERED that:

(1) The Motion to Remand (Doc. #8) is GRANTED.

(2) This case is REMANDED to the Circuit Court of Montgomery County, Alabama.

(3) The clerk is DIRECTED to take the appropriate steps to effect the remand.

Done this the 5th day of October, 2006.

        /s/  W. Keith Watkins
UNITED STATES DISTRICT JUDGE